CHARLES L. LOWELL, Appellant, *vs.* NORTH & CARLL, Respondents.

#### APPEAL FROM THE DISTRICT COURT OF DAKOTA COUNTY.

Upon a trial by the Court all material issues should be passed upon, but immaterial issues may be disregarded.

In a case of an illegal foreclosure by advertisement, the mortgagor has two remedies. He may either apply to the Court to have the sale set aside, or he may hold the mortgagee personally responsible for the injury he has suffered by the unauthorized sale of the mortgaged property.

In an action for a balance due on a note after deducting the amount realized upon the foreclosure of a mortgage by which the note was secured—the answer alleged facts showing that the sale was illegal, and that in consequence of its illegality the property sold for less than its value, and that had the sale been duly made, the property would have sold for enough to have satisfied the note. *Held* that these allegations constitute a good defence.

The fact that the mortgagor has the right of redemption in the property sold, does not avoid this defence. He would have this right if the sale had been regular, and courts will afford a remedy when the rules regulating the sale of mortgaged property are violated to the prejudice of the debtor.

Where a general law did not specify the time when it should go into operation, but left it to go into effect in thirty days after its approval, under the Statute (sec. 2, chap. 3, p. 114, Stat. of Min.) the law will presume that it was duly (*i. e.* immediately) published, in the absence of any allegation to the contrary.

An allegation that a notice of sale upon foreclosure by advertisement was not published in a newspaper printed in the county where the mortgaged premises were situated, nor in the nearest paper in one of the adjoining counties, (since *chap.* 90, *of Session Laws of* 1858, *p.* 293, became a law,) was a sufficient allegation of want of proper notice of sale.

Points and authorities on behalf of Appellant.

*First.*—The complaint does not state facts sufficient to constitute a cause of action.

I. This is not an action upon a promissory note simply to recover the amount of the same, to be ascertained and computed by the terms of the note alone, but it is a *special* action—*sui generis*—seeking to recover a personal judgment against the Defendant as maker and mortgagor, for an assumed "*balance*" remaining unsatisfied, as it is alleged upon his note and mortgage, and I take the ground that the complaint does not state facts as therein pleaded sufficient to constitute a cause of action, and indeed that after foreclosure by advertisement, no action at law can be maintained under our *local system* to recover a personal judgment for an alleged "*balance*" on the note and mortgage.

II. Such mortgages for such purposes are, in this State, the creatures of *local law*. Of Statute creation, the rights and liabilities of the parties thereto are *defined, regulated and*

*enforced* by our own Statutes, and by them alone. *Collated Statutes, chap.* 35, *p.* 397–401 *inclusive*; *Ibid, chap.* 34, *p.* 391–396 *inc.; Ibid, chap.* 75, *p.* 643–645 *inc.; Ibid, chap.* 83, *p.* 671–674, *and subsequent Statutes.*

III. Having provided *who* may make such mortgages, and *how* the same shall be made and registered, together with the rights and liabilities of the parties thereto, the Legislature next provided for the mortgagee as creditor, two appropriate remedies of its own—one *in personam*, and the other *in rem and in personam.* By these the creditor may, as his *first step*, sue at law on the note, and recover judgment and execution; and after exhausting that remedy on the other property of his debtor, he may resort, if need be, to the mortgaged premises, and advertise and sell under the *power* enough to satisfy the residue of his judgment. Or he may, at his election, proceed in the *first instance* to foreclose his note and mortgage in Chancery—procure a judicial sale, and in the same action take a personal judgment for any unsatisfied balance after exhausting the security. These adequate remedies, and the order of time in which they may be invoked, these plaintiffs ignore, and having disposed of the security *when* they pleased, and *how* they pleased, now bring this action, which is not authorized by law, and cannot be maintained for that reason.

IV. It is admitted that after foreclosure by advertisement, actions at law, on the note or bond, have been sustained by eminent Judges, as in *Aylet vs. Hill*, 2 *Dicken's R.* 551, *by Lord Thurlow, in* 1779; *but the doctrine is doubted by same Judge in Took vs. Hartly, in* 1784; *and denied by Lord Elden, in Perry vs. Parker, in* 1786; *and doubted and not approved in this last case in another hearing by Lord Erskine, in* 1788; 3 *Johnson's Ch. Rep.*, 331, *Punkly vs. Van Buren, by Chancellor Kent;* 2 *Gallison's C. C. Rep.*, 152, *Hatch vs. White, by Mr. Justice Story; and* 5 *Cowen Rep.*, 380, *The Globe Ins. Co. vs. Lansing.* But the point is, that those decisions are not authorities *here*, because not based upon mortgages and powers like ours, made against dissimilar defences, and under very different systems. Those cases were sustained from judicial necessity, to prevent a failure of justice. For as the law formerly stood, both in England and

this country, if the mortgagee elected to sue in the first instance on the note, he was deemed to have abandoned his claim on the property, while, if he went into a Court of Chancery, he could there obtain only a decree of sale; and if the proceeds were insufficient to pay the demand, he was driven by legal necessity from Chancery, which has no power, to a court of law, to obtain a judgment against his debtor and his other property. Not so under our system of combined Law and Equity. Thus this action fails on the plaintiff's own showing—(the following cases will be referred to and commented upon): *3d Conn. Rep.*, 62, *The Derby Bank vs. Lunden;* 18th *Conn. Rep.*, 131, *Bassett vs. Mason.*

*Second.* The claim sued has been satisfied and extinguished.

I. The payees of this note have procured a foreclosure of the mortgage satisfactory to themselves by a sale of property of available value exceeding the amount due, and have entered into and retained possession as purchasers under the same, and this operates by way of satisfaction to extinguish the debt, and is a good defence to this action. 4 *Wend. Rep.*, 384, *Spencer vs. Hartford, and cases cited in opinion;* 9 *Ibid*, 287–292, *Morgan vs. Plumbe and others;* 11 *Ibid*, 107, *Case vs. Boughton;* 2 *Greenleaf Evidence Sec.*, 524; 10 *Pick.*, 380, *Heage vs. Holmes, p.* 381, *per Spair C. J.*

II. This branch of the defence is not the less appropriate and effectual by reason of the fact that the *law* gave to the Defendant a naked right of redemption, which from his necessities he has allowed to expire without availing himself of its benefits. The cases where the contrary doctrine has been distrustfully enunciated are not analogous, and therefore inapplicable.

*Third.* The third ground of difference here interposed is well sustained on the pleadings. The Plaintiffs having so resorted to the security of the mortgage, and undertaken the execution of the power therein as trustees of the same, without concluding the one or exhausting the other, cannot maintain this special action to recover an assumed *"balance"* on the note and mortgage, while it does not yet appear that there will be any *"balance"* when the trust shall have been faithfully executed and the security fairly and fully exhausted.

I. The note and mortgage are but one contract, and when the Plaintiffs required a power of sale to be inserted in the mortgage, and accepted the trust under the same, they became bound to use good faith and every reasonable degree of diligence and prudence in conducting the sale in conformity with the terms of the power and the provisions of law, to obtain the highest *available* value of the property, and to apply the same truly to the payment of the note, and to that amount they must account to the Defendant. *Burrell on Assignments*, 498; 3 *Metcalf's Rep.*, 308, *Howard vs. Ames;* 29 *Maine Rep.*, 56, *Southard vs. Wilson;* and 31 *Maine Rep.*, 28, *Johnson vs. Condaye.*

II. Here the mortgaged property was worth $1000, and would have brought, at any sale duly published and made fairly and in good faith, more than sufficient money to pay the amount due and all costs and expenses, but the mortgagees contrived to procure a sale to themselves at the nominal sum of $300. This constitutes a good defence to the plaintiffs' special action to recover an assumed "*balance.*" 3 *Metcalf's Rep.*, 308, *Howard vs. Ames;* 1 *Hilliard on Mortgages, chp.* 7, sec. 26, p. 131, and Notes; 2 Ibid, chp. 37, p. 228 to 242, and Notes; Burrell on Assignments, p. 553–4; 3 Howard, 333, (15 Curtis, 479,) Oliver vs. Platt; Hill on Trustees, 2d Amer. ed., 756–9, 800, and Notes at top.

III. It is not competent for the mortgagees, and those representing their rights, only to resist this defence on the ground that by reason of the *abuse of their trust* the foreclosure is incomplete, and their title and possession liable to be defeated. That position is not to be in their mouths, and besides that question is not involved in the present action, or raised by the issue here.

*Fourth:* If the action could be maintained on any legal principles—which is denied with unshaken confidence—then even the order and judgment are unauthorized by law. The note bears date of May 3, 1857, and is for $733.16, the interest whereon, at 3 per cent. per month, to August 3, 1857—when the note matured and the first payment was made—was $65.98, which deducted from the $200 paid, leaves $134.02, and that taken from the principal gives $599.14 on which legal

interest to October 15, 1858, is $50.31, and this deducted from $272,00 endorsed under that date leaves $221.69, which taken from $599.14 gives $377.45, whereon the interest to the date of the judgment, Nov. 17, 1859, was $28.79, and this added to the last principal makes $406.24, while the order and judgment are for $881.79.

*Brewster et als vs. Wakefield*, decided on appeal, by the Supreme Court of the United States.

Points and authorities of the Respondent.

*First.*—The Court below did not err in rendering judgment for Plaintiff.

1. This is an action upon a promissory note brought to recover of the Defendant the balance due on the same, and all the facts necessary to constitute a good cause of action in a case of that kind are set forth in the complaint. It states the name of the parties composing the firm of North, Carll & Co., at the time of the making and delivery of the note in question, it also sets forth in legal form the making and delivery of the note to said North, Carll & Co., and the consideration for which the same was given. It also properly alleges the transfer and assignment of said note by said North, Carll & Co. to the Plaintiffs, and the amount claimed to be due thereon, at the time of the commencement of this action.

2. The allegations in the complaint which are above referred to show all the facts which were necessary to be set forth to entitle the Plaintiff to recover.

*Second.*—All that portion of the Plaintiffs' complaint which sets forth the making of the mortgage to secure the payment of said note, and the foreclosure of the same is surplusage and irrelevant. It is not a statement of facts which were material to the Plaintiff's rights to recover, but it is a recital of evidence showing in what manner the last payment on said note was made, and are not facts, on which a material issue in this action could be joined.

The only issues raised by the Defendants' answer are:

1. On the allegation in the complaint stating who comprised the firm of North, Carll & Co.

2. On the allegation in the complaint setting forth that the

firm of North, Carll & Co., transferred said note to the Plaintiffs, both of which issues were found in favor of the Plaintiffs by the Court below.

The pretended issue in relation to the sale and foreclosure of the mortgaged premises raised by the answer has nothing to do with the Plaintiff's right to recover in this action; if the sale of the mortgaged premises was not conducted according to law, it amounts to nothing more than if there had been no attempt to sell the same, excepting that the Defendant has the benefit of the amount for which the Plaintiffs claimed said premises sold for, to wit: the sum of $272, which the complaint shows was endorsed on said note. If the sale of said premises was illegal, and the same sold for less than their real value, the Defendant could not be prejudiced thereby, for he had the right of redeeming the same any time within one year after the sale by paying the amount for which the same was sold and interest.

*Third.*—Even if the regularity of the sale and foreclosure of said mortgaged premises was a proper issue to be tried in this action, the answer does not state facts sufficient to show that the sale and foreclosure of the same was illegal, or that the same was not conducted fairly; the only question as to the legality of the foreclosure and sale raised by the answer, is as to the notice given. The answer admits there was a notice of said sale published in some paper, but does not allege what paper. It alleges that it was not published in any paper printed in the county where the premises are situated, but does not allege that there was any paper printed in that county at the time. It alleges that the notice was not published in the nearest paper printed in the county adjoining the county where the premises are situated, but does not allege that it was not published the length of time required by law in some newspaper published at the seat of government of the State.

At the time the notice of the sale of said mortgaged premises was published, the Statute required that if there was no paper published in the county where the premises were situated, the notice of sale should be published in some paper published at the seat of Government. *Rev. Stat. Chap.* 85, *Sec.*

5

4, p. 435; *Session Laws of* 1858, *pp.* 293 and 294; *Comp. Stat. Chap.* 3, *Sec.* 2, *p.* 114.

*Fourth.*—The mortgage debt was not satisfied and extinguished by the foreclosure of said mortgage. If the sale was illegal, no part of the mortgaged debt was paid thereby. If the foreclosure was legal, the amount for which the premises sold, after deducting the costs of sale, applied as part payment of said note.

*Fifth.*—A person having a note secured by mortgage on real estate has two remedies for collecting the same; the one is personal, and the other is against the mortgaged premises. He cannot pursue both at the same time. He can exhaust his personal security, and if there is not sufficient to satisfy the debt, then he can resort to his mortgage security for the ballance, or he can first look to his mortgage security for the payment of his debt, and if upon the sale of the same, the avails should prove insufficient to satisfy the mortgage debt, he can resort to his personal security for the balance, by an action on the note, as in this case. If the mortgage is foreclosed by suit in chancery, the Statute prescribes that if there is a balance due after applying the avails of the sale of the mortgaged premises in payment of the debt, the Court may render judgment against the maker of the mortgage note for such balance. If it is foreclosed by advertisement, and the avails of the sale of the mortgaged premises are insufficient to pay the mortgage debt, there is no other remedy left for the recovery thereof, except by an action at law on the mortgage note. Where there is a wrong there is a remedy; when the Statute provides none, the remedy is at common law. The Courts in many of the States where they have no Statute authorizing the Court to render judgment against the maker of the mortgage note for the balance that remains due after applying the avails of the sale of the mortgaged premises, have sustained actions on the mortgage note, to recover such balance even when they were foreclosed by suit in chancery. *Comp. Stat. Chap.* 83, *Sec.* 9, *p.* 671; 4 *Kent Com. p.* 185; 2 *Hilliard on Mortgages, Chap.* 37, *Sec.* 3, *p.* 229; *Hatch vs. White,* 2 *Gall. R.,* 154; *Omley vs. Swan,* 3 *Mass. R.* 474; *Southland vs. Wilson,* 29 *Maine R.* 56.

*Sixth.*—The Court below did not err in computing the interest on said note and, assessing the damages in said action at the sum of $881.97.

The rule adopted by the Court below in computing the interest on said note was a rule established by the highest legal tribunal in the State (the Supreme Court), and was the law and only law on the subject, in existence in this State at the time of the rendition of the judgment in this action. The decisions of this Court, so long as they stand unreversed, are as binding on all the inferior Courts of this State as are the acts of the Legislature. *Mason, Craig et al. vs. Callender, Flint & Co.,* 2 *Min. R.* p. 350; 1 *Kent's Com. pp.* 475, 476.

Charles L. Lowell, *in person.*

L. & S. Smith, Counsel for Respondent.

*By the Court*—Atwater, J. The Plaintiffs below, North & Carll, bring their action to recover the sum of $633 77-100, claimed to be due from the defendant upon a promissory note. The complaint sets forth the making and delivery of the note by the Defendant, &c., and also the execution and delivery by the Defendant of a mortgage to secure the same, upon certain lots in the town of Wilton, Waseca County; that default had occurred in the condition of said mortgage, and the same had been foreclosed and the property sold for $300, which (with other payments) had been endorsed upon the note, leaving a balance due on the same of $633 77-100 for which, with interest at the rate of three per cent. per month, the Plaintiff demanded judgment.

The answer admits the execution and delivery of the note and mortgage, but sets up as a ground of defence, that the Plaintiffs proceeded to foreclose the mortgage by advertisement, and that in so doing they did not comply with the requisitions of the statute in reference thereto. That the notice of sale was not published in a newspaper printed in the county where the mortgaged premises were situated, nor in the nearest paper in one of the adjoining counties, that the time and place of sale were unknown to the Defendant, and were not pub-

licly and generally known, whereby the sale was not generally attended by purchasers ; that the Plaintiffs procured a formal purchase by themselves for the sum of three hundred dollars, when in fact the premises were worth one thousand dollars, and would have brough at any sale duly published, and made fairly and in good faith, more than sufficient money to pay the balance due on the note.

The cause was tried by the Court, and judgment rendered for the Plaintiffs for the amount demanded in the complaint. In the facts found by the Court, no mention is made in regard to any of the allegations above stated in the answer, and it is presumed the Court held them immaterial. If they are so in fact, no finding upon them would be required, but if otherwise, an omission to try those issues would be error, and if the allegations are admitted to be true, would form a good defence to the action. To determine their materiality, it will be necessary to consider the duties and liabilities of a mortgagee, in the management and disposal of the property conveyed to him, as security for the indebtedness of the mortgagor.

The relations of the mortgagor and mortgagee are in some respects identical with those of trustee and *cestui que trust.* Technically, they are not so termed, the rights and liabilities of each being defined and limited by statute more specifically than is done in the case of the trustee and *cestui que trust.* The mortgagee, however, is in one sense a trustee of an express trust. He has received a conditional conveyance of property from his debtor as *security* for his debt. He holds it for that purpose only, and can only dispose of it for the accomplishment and in pursuance of that end; and that, in accordance with the provisions of the statute. The mortgagor is entitled to the surplus arising from the sale of the mortgaged premises, and also has a right of redemption. He has therefore interests which a court will protect, when its aid is invoked in a proper case. The mortgagee in his management and disposition of the mortgaged property, has no more right to prejudice the interests of the mortgagor, than has the trustee those of his *cestui que trust.* It is well settled that a trustee cannot purchase in his own name, at a sale either in behalf of, or against his *cestui que trust*, nor could the mortgagee except by express

authority of statute, and for the same reason that the trustee could not. The only authority which the mortgagee has to dispose of the mortgaged property, is that granted by the terms of the mortgage, and this only authorizes him to dispose of it in accordance " with the statute in such case made and provided." When, therefore, the mortgagee proceeds to dispose of the property contrary to the statute, he is acting without authority, and renders himself liable to the mortgagor for the consequences of his wrongful act. The question does not here arise as to whether such a sale would be void, as the relief sought is not to vacate the sale.

The appellant has two remedies in case of a sale like the one under consideration—he may either apply to the Court to have the sale set aside, or he may hold the mortgagee personally responsible for the injury he has suffered by the unauthorized sale of the mortgaged property. In this case he has chosen the latter remedy. The allegations of the answer constitute a good cause of action—which, under the statute, may be set up as a defence—the statement of the illegal sale, and that in consequence thereof the property sold for less than its value, and that had the sale been duly made, it would have brought sufficient to have satisfied the note, which it was given to secure. If these allegations shall be found true, they constitute a good defence to the action below. In adopting this form of remedy, it would be incumbent on the Defendant to prove all these allegations, and it would not be sufficient to show that the sale was illegal, and that the property brought less than its value, as those facts, if admitted, would not show of themselves, that the Defendant had suffered any injury. The allegations in the answer as to the sale of the property for less than its value, and the amount it would have brought if duly sold, only become material when the sale is illegal.

It is no answer to the views above expressed, to urge, as is here done, that the Defendant below has suffered no injury even if the sale be illegal, as the Defendant may redeem, and thus save his property, if it be as valuable as is alleged. It is for the interest of the mortgagor that the property bring as high a price as possible, and the statutes are framed to attain this end. It does not lie in the mouth of the mortgagee, having

wrongfully disposed of the property of his debtor, to assert that the Defendant may save himself from loss by exercising his right of redemption. The law gives him that right even when the sale is legal. But the law has also provided certain rules regulating the sale of mortgaged property, to make it available so far as possible, as security for the debt of the creditor. Courts of Justice should afford a remedy where these rules are violated to the prejudice of the debtor.

The respondents also claim that the sale is not shown by the answer to have been illegal, inasmuch as the Defendant does not allege that the notice of sale was not published in a newspaper published at the seat of government. Such an allegation was unnecessary, as if the notice was so published, it was still illegal. *Chapter 96, of the Session Laws of* 1858, *p.* 293, provides that the notice of sale shall be published in a newspaper of the county where the premises intended to be sold, or some of them, are situated, if there be one, if not, then in the nearest paper in one of the adjoining counties. This act was approved August 2d, 1858. The sale took place October 15th, 1858. *Sec. 2 of Chap. 3, Comp. Stat., p.* 114, provides that " every statute which does not expressly prescribe the time when it shall go into operation, shall take effect throughout the Territory on the thirtieth day next after that on which it shall be approved by the Governor, or otherwise become a law, according to the provisions of the organic act of this Territory; *Provided,* That no general law shall take effect until published." The two following sections, and *Secs. 1 and 2, p.* 117, *Comp. Stat.,* provide for the immediate publication of the laws, and in the absence of any allegation to the contrary, it will be presumed that the law had been duly published. The answer alleges specifically that the notice of sale was not published in a newspaper printed in the county where the mortgaged premises were situated, nor in the nearest paper in one of the adjoining counties. This was a sufficient allegation of want of proper notice of sale.

The judgment below is reversed and a new trial granted.