[Civ. No. 15328. Third Dist. Mar. 26, 1976.]

JEFF WANEE, Plaintiff and Appellant, v.
BOARD OF DIRECTORS OF THE ASSOCIATED STUDENTS OF
CALIFORNIA STATE UNIVERSITY, CHICO et al.,
Defendants and Respondents.

## COUNSEL

Loren E. McMaster and Michael D. Stump for Plaintiff and Appellant.

Houghton & Houghton and Ann R. Houghton for Defendants and Respondents.

## OPINION

JANES, J.— ■ ■■■ Petitioner, formerly the manager of the Associated Students Book Store at California State University, Chico, appeals from an order sustaining, without leave to amend, the demurrers of all respondents to his petition seeking review under Code of Civil

Procedure section 1094.5 of the administrative decision dismissing him from said position.[1][2]

Petitioner's dismissal was administratively found to have been in good faith but without cause. The sole issue on appeal is whether dismissal on that basis was proper. Specifically, the question presented is whether petitioner, as manager of the associated student book store and an employee of the Associated Students, California State University, Chico (hereinafter "ASC"), is entitled to the protections, in regard to dismissal, with which employees of the university are clothed. We will hold that no such protection is afforded petitioner and therefore, that his dismissal was within the discretion conferred upon the board of directors of ASC and that no requirement exists that it be supported by good cause.

Petitioner was dismissed from his position by the board of directors of ASC effective May 5, 1973. No formal grievance procedure for employees of ASC had previously been established and by stipulation of the parties it was agreed that petitioner's sole administrative remedy would be an administrative hearing conducted before Attorney Raymond A. Leonard. After a three-day hearing, the hearing officer in his memorandum decision concluded that although petitioner was dismissed without cause, he was dismissed in good faith and the dismissal was one which the board of directors of ASC was empowered to make. The hearing officer also recommended that petitioner be rehired notwithstanding the absence of any obligation on the part of ASC to do so.

The hearing officer's decision was filed July 5, 1973. On July 21, 1973, petitioner was rehired to his previous position under a limited term appointment to expire December 1, 1973. By letter dated August 31, 1973, petitioner terminated his employment effective September 15, 1973. His petition for mandamus was filed in superior court on April 11, 1974.

In support of the claim that he was entitled to the right of a college employee to be dismissed only for cause, petitioner relies upon the

---

[1]An order sustaining a demurrer without leave to amend is not an appealable order. (Code Civ. Proc., § 904.1; *Scott* v. *Security Title Ins. & Guar. Co.* (1937) 9 Cal.2d 606, 608 [72 P.2d 143, 117 A.L.R. 1049].) However, an attempt to appeal from such order may be treated by this court as an appeal from a subsequently entered judgment. (*Willson* v. *Burner* (1964) 230 Cal.App.2d 947, 948 [41 Cal.Rptr. 449]; see rule 2(c), Cal. Rules of Court.) Judgment of dismissal was entered in this case on February 5, 1976.

[2]Petitioner has dismissed his appeal as against respondent Stanford Cazier, president, California State University, Chico.

following paragraph set forth in the ASC Employee Handbook under the hearing of Job Security:

"The first twelve months of your appointment serve as a probationary, or trial period. During this interval you must satisfactorily demonstrate your ability to fulfill the duties and responsibilities of your job. There is no desire to discharge an employee unless such action is necessary; however, there is nothing which prevents a discharge for an unsatisfactory employee. After the satisfactory completion of twelve months of full time service, *you will be accorded permanent status.*" (Italics in original.)

It is claimed that the handbook fails to define the terms "permanent" and "probationary" as used therein. Petitioner thus urges that we apply to those terms the meanings given them in the California State University system. Such definitions are set forth in Education Code section 24301,[3] subdivision (a), as follows:

"(a) As used in this article, unless the context otherwise requires:

"(1) 'Dismissal' means dismissal for cause.

"(2) 'Layoff' means separation from a position for lack of funds or lack of work.

"(3) 'Probation' means the period an employee must serve before becoming entitled to permanent employment.

"(4) 'Permanent' means that the employee has a right to continued employment unless dismissed or laid off."

The conditions which support a dismissal for cause are enumerated in section 24306; section 24305 deals with the rejection of probationary employees.

Section 23801 authorizes the establishment of student body organizations and defines their permissible activities. Such organizations "may be established at any state college under the supervision of the college officials for the purpose of providing essential activities closely related to, but not normally included as a part of, the regular instructional program of the college. Such an organization may also operate a campus store, a

---

[3]All code references, unless otherwise specified, are to the Education Code.

cafeteria, and other projects not inconsistent with the purposes of the college . . ."

ASC (a nonprofit corporation) filed its articles of incorporation with the Secretary of State on March 20, 1942. The articles state that one of the purposes of the organization is to " '[o]perate, supervise, manage and otherwise control . . . [a] . . . bookstore. . . .' " The corporation has a constitution characterized by the parties as setting forth its bylaws.

ASC is an "auxiliary organization" as the same is defined in section 24054.5, subdivisions (b) and (c).[4] Section 24054, as then applicable, sets forth the regulations governing such auxiliary organization and more particularly subdivision (c) thereof provides: "The operation of state university or college auxiliary organizations shall be conducted in conformity with regulations established by the trustees, . . . The regulations shall include provisions requiring the governing board of each auxiliary organization to provide salaries, working conditions and benefits, *exclusive of retirement and permanent status benefits,* for the full-time employees of each auxiliary organization which are comparable to those provided state university or college employees performing similar services." (Italics added.)[5]

Petitioner's argument also ignores an opinion of the Attorney General, addressed to the question whether auxiliary organizations are instrumentalities of the state and thus governmental entities for social security purposes. The Attorney General concluded that an auxiliary organization such as ASC was a nongovernmental body created to promote the welfare of the college and not a public agency carrying out a governmental function. (47 Ops.Cal.Atty.Gen. 8-11, 10 (1966).) Involved in that matter were employees of the El Corral Book Store at California State Polytechnic College and of San Jose State College Foundation. The opinion states, "Both are created, not under laws pertaining to governmental entities, but under general provisions applying to private, as distinguished from governmental, entities." While the opinions of the

[4]Section 24054.5, as then applicable, provides in relevant part:
"As used in this article, the terms 'auxiliary organization', . . . include the following entities:
"  .    .    .    .    .    .    .    .    .    .    .    .    .    .
"(b) Any entity formed or operating pursuant to Article 2 (commencing with Section 23801) of this chapter.
"(c) Any entity which operates a commercial service for the benefit of a state university or college on a . . . campus or other state university or college property."

[5]Sections 24054.5 and 24054 were amended in 1974 in a manner not relevant herein. (Stats. 1974, ch. 44, §§ 71.3, 71.5.)

Attorney General are not controlling, they generally "have been accorded great respect by the courts. [Citations.]" (*Wenke* v. *Hitchcock* (1972) 6 Cal.3d 746, 751-752 [100 Cal.Rptr. 290, 493 P.2d 1154].)

█ There appears no doubt that employees such as petitioner are not employees of the college or of any governmental entity, but instead are employees of a private corporation. Under the laws which govern private corporations, petitioner, as an employee thereof, has no right insulating him against a dismissal which is made in good faith but without cause. (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188-189 [344 P.2d 25]; *Coats* v. *General Motors Corp.* (1934) 3 Cal.App.2d 340, 348 [39 P.2d 838].) "A contract for permanent employment . . . is only a contract for an indefinite period terminable at the will of either party. . . ." (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 39 [172 P.2d 867].)

" ' "It is an elementary principle of law that a court has no power or right to intermeddle with internal affairs of a corporation in the absence of fraudulent conduct on the part of those who have been lawfully entrusted with the management and conduct of its affairs. . . . The authority of the directors in the conduct of the business of a corporation must be regarded as absolute when they act within the law. The court cannot substitute its judgment for that of the directors." ' [Citations.]" (*Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 256-257 [13 Cal.Rptr. 491].)

Petitioner demonstrates no fraudulent conduct on the part of the ASC board of directors. The finding of the administrative hearing officer that the board, in dismissing him, acted in good faith is therefore not negated. Under such circumstances, petitioner was not entitled to relief. Further, because of the absence of any right protected by law, his petition for mandamus failed to state a cause of action against respondents and thus was properly dismissed.

The judgment is affirmed.

Regah, Acting P. J., and Paras, J., concurred.