Filed 12/18/15  Trapp v. U.S. Bank Nat. Assn. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| BENNIE G. TRAPP, SR., et al., | |
| Plaintiffs and Appellants, | E059909 |
| v. | (Super.Ct.No. RIC1107293) |
| U.S. BANK NATIONAL ASSOCIATON as Trustee, etc. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Gordon R. Burkhart, Judge.  Affirmed.

Andrews Law Group, Brian C. Andrews and James E. Pilley, for Plaintiffs and Appellants.

Bryan Cave, Sean D. Muntz, Thomas Nanney and Katherine S. Walker, for Defendants and Respondents U.S. Bank National Association as Trustee and JP Morgan Chase Bank, N.A.

1

After plaintiff and appellant Bennie G. Trapp, Sr. (Senior) defaulted on a home mortgage, foreclosure proceedings were instituted and the property was sold at a trustee's sale. Senior and his son, B. Garrett Trapp, Jr. (Junior; collectively, "plaintiffs"), initiated this suit against defendants and respondents U.S. Bank National Association as Trustee and JP Morgan Chase Bank, N.A. (collectively, "defendants").[1] Plaintiffs' operative second amended complaint (SAC) asserts 15 causes of action to rescind the foreclosure sale and award damages. The trial court sustained defendants' demurrer to the SAC without leave to amend and entered a judgment of dismissal. Plaintiffs appeal. Because they have neither stated a cause of action, nor shown they can amend to state a cause of action, we shall affirm.

## FACTUAL AND PROCEDURAL HISTORY

We presume the facts alleged in the SAC and in the appellants' opening brief state the strongest case for plaintiffs. (See *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1286.) Stripped of legal conclusions (see *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), those facts are as follows: On December 23, 2004, Senior (age 77) executed a promissory note in the amount of $126,000, secured by a deed of trust (DOT), to refinance a home located at 12860 Perris Boulevard, No. D7, Moreno Valley, California 92553 (Property). Senior purchased the Property for Junior, his quadriplegic

---

[1] U.S. Bank National Association as Trustee successor in interest to Bank of America, National Association as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-2 (LaSalle) and JP Morgan Chase Bank, N.A. as successor by merger to Chase Home Finance LLC (Chase).

son. The DOT listed BNC Mortgage, Inc. (BNC) as the lender, Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and T.D. Service Company as trustee. Later, the loan was pooled with other loans in a securitized investment trust. In 2007, foreclosure proceedings were instituted, with a notice of default and election to sell recorded on September 13, 2007. In or about January 2008, plaintiffs sought a loan modification, which defendants purportedly considered. On May 28, 2008, an assignment of the DOT to LaSalle was recorded. The Property was sold at a trustee's sale and the trustee's deed upon sale was recorded on July 29, 2008, granting all interest in the Property to LaSalle.

On September 26, 2008, plaintiffs sued LaSalle and Chase regarding the foreclosure of the Property (prior action). By way of their prior action, plaintiffs alleged claims for quiet title, wrongful foreclosure, breach of duty of good faith and fair dealing, fraudulent business practices, predatory lending practices, breach of duties associated with the Americans with Disabilities Act, breach of duties associated with Sales Effected to Elder Persons and Persons with Disabilities, and breach of contract. On June 19, 2009, LaSalle and Chase removed the prior action to the United States District Court. Following such removal, the federal court granted, in part, LaSalle's and Chase's motion to dismiss. All but plaintiffs' claims for predatory lending practices and breach of contract (as applied to Chase only) were dismissed with prejudice. In June 2011, plaintiffs dismissed the remaining claims without prejudice.

On April 27, 2011, plaintiffs initiated this action. The SAC was filed on June 10, 2013. It asserts causes of action for (1) quiet title; (2) wrongful foreclosure; (3) breach of

3

oral contract; (4) breach of good faith and fair dealing; (5) unfair business practices; (6) promissory estoppel; (7) abuse of process; (8) fraud; (9) malicious prosecution; (10) infliction of emotional distress; (11) notary fraud; (12) negligence; (13) negligent misrepresentation; (14) slander of title; and (15) declaratory relief. Defendants filed their demurrer to the SAC on July 26, 2013. On September 10, 2013, the trial court sustained the demurrer without leave to amend. Judgment in favor of defendants was entered on September 23, 2013.

## DISCUSSION

### A. STANDARD OF REVIEW

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).)

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citations.] We liberally construe the pleading with a view to substantial justice between the parties." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.)

"'If we determine the facts as pleaded do not state a cause of action, we then consider whether the court abused its discretion in denying leave to amend the complaint. [Citation.] It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend if the plaintiff demonstrates a reasonable possibility that the defect can be

4

cured by amendment.'" (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1204.) However, "'[s]uch a showing can be made for the first time to the reviewing court . . . .'" (*San Diego City Firefighters, Local 145 v. Board of Administration etc.* (2012) 206 Cal.App.4th 594, 606.) "Whether a plaintiff will be able to prove its allegations is not relevant." (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057.)

B.     ANALYSIS

1.     *JUNIOR LACKS STANDING TO SUE DEFENDANTS*

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) "'A real party in interest ordinarily is defined as the person possessing the right sued upon by reason of the substantive law. [Citation.]' [Citation.] A real party in interest must have an actual, substantial interest in the subject matter of the action." (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 208.) "A party who is not the real party in interest lacks standing to sue. [Citation.] . . . A complaint filed by someone other than the real party in interest is subject to general demurrer on the ground that it fails to state a cause of action." (*Redevelopment Agency of San Diego v. San Diego Gas & Electric Co.* (2003) 111 Cal.App.4th 912, 920-921.)

Here, Senior is the person who borrowed the money and is the only trustor on the deed of trust. Based on the allegations in plaintiffs' pleadings, Senior is the only person who owns or holds title to the Property. Thus, Senior is the real party in interest. Because Junior is not a real party in interest, he lacks standing to sue. Nonetheless, our

analysis continues to consider the claims raised by plaintiffs, even thought Junior has no standing.

2. *PLAINTIFFS CONCEDE NOTARY FRAUD, MALICIOUS PROSECUTION, NEGLIGENCE AND ABUSE OF PROCESS CLAIMS*

Plaintiffs concede that their claims for notary fraud (eleventh cause of action), malicious prosecution (ninth cause of action), negligence (twelfth cause of action) and abuse of process (seventh cause of action) fail.

3. *PLAINTIFFS LACK STANDING TO BRING CLAIMS BASED ON PURPORTED DEFECTS IN ASSIGNMENTS OF MORTGAGE*

Five of plaintiffs' causes of action—quiet title (first cause of action), wrongful foreclosure (second cause of action), breach of covenant of good faith and fair dealing (fourth cause of action), slander of title (fourteenth cause of action), declaratory relief (fifteenth cause of action)—are grounded in purported flaws in the chain of title to the note and deed of trust, which they argue render the assignments void, so the parties who foreclosed on the Property were without authority to do so. We find that plaintiffs lack standing to raise this argument.[2]

The great weight of California authority rejects the notion that a borrower in default on a loan has standing to attack a purportedly void assignment of a note or deed of trust to which it is not a party as a means of challenging the foreclosure process. In

---

[2] Because we address the viability of these claims on the merits, we need not reach defendants' assertion that they are barred by the doctrine of res judicata.

6

arguing otherwise, Senior relies virtually entirely on *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). In that case, the appellate court determined that the borrower had standing to attack a void assignment to which it was not a party. (*Id*. at p. 1095.)

We doubt, however, that *Glaski* was correctly decided. (See *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1529 ["It is true that we typically follow the decisions of other appellate districts or divisions, but only if we lack good reason to disagree"].) Among other defects in its reasoning, the *Glaski* court relies on federal case law interpreting the law of other jurisdictions. (*Glaski*, *supra*, 218 Cal.App.4th at pp. 1094-1095.) California cases other than *Glaski* have consistently held that a borrower lacks standing to attack a purportedly invalid assignment of their mortgage absent a showing of prejudice. (E.g., *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85-86.) And prejudice rarely, if ever, can be shown in such cases, because the borrower's obligations under the promissory note remain unchanged, regardless of who holds the present beneficial interest. (See *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 (*Jenkins*) [finding that even assuming the transfers of the promissory note were invalid, the borrower is not the "victim" because her obligations remained unchanged].) We are not aware of any California case that has

7

followed *Glaski* on the issue of a borrower's right to challenge a foreclosure based on an allegedly improper assignment.[3]

Plaintiffs' primary articulated argument as to why these causes of action state a claim primarily rests on *Glaski*.  We reject *Glaski*, and conclude that those causes of action fail to state a claim.  For similar reasons, plaintiffs cannot show prejudice from the foreclosure.  (*Siliga v. Mortgage Electronic Registration Systems, Inc.*, *supra*, 219 Cal.App.4th at p. 85.)  No prejudice occurs when a borrower is in default and fails to tender and cure the default.  (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1508 [Fourth Dist., Div. Two]; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.)  We reject plaintiffs' effort to rely on contrary federal decisions that predate these dispositive California authorities.[4]

---

[3] The California Supreme Court has granted review of several cases in which the Court of Appeal had rejected *Glaski*—the lead case is *Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted August 27, 2014, S218973.

[4] Plaintiffs' lack of standing to challenge purported flaws in the chain of assignments is hardly the only fatal flaw in these claims.  In light of our conclusion regarding *Glaski*, however, we need not discuss those additional issues.  Nonetheless, during oral argument, plaintiffs asserted that their claim for wrongful foreclosure should remain viable because no notice of sale was posted.  (*Scott v. Security Trust Ins. & Guar. Co.* (1937) 9 Cal.2d 606, 610.)  In opposition to defendants' demurrer, plaintiffs attached a copy of the Trustee's Deed Upon Sale which stated that "[a]ll requirements of law regarding the mailing of copies of notices or publications of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with."

### 4. *PLAINTIFFS LACK STANDING TO BRING AN UNFAIR COMPETITION CLAIM UNDER PROPOSITION 64*

Plaintiffs' claim for unfair business practices (fifth cause of action) purports to assert a claim under Business and Professions Code sections 17200 et seq., commonly referred to as the unfair competition law (UCL). (See *Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) Even if we were to assume, however, that plaintiffs have alleged facts indicating defendants' alleged actions violated at least one of the UCL's unfair competition prongs (they have not), plaintiffs could not show a causal link between the purported violations and any economic injury they may have suffered. As such, plaintiffs lack standing to assert a claim under the UCL.

"Under the UCL, any person or entity that has engaged, is engaging or threatens to engage 'in unfair competition may be enjoined in any court of competent jurisdiction.' [Citations.] 'Unfair competition' includes 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'" (*Jenkins*, *supra*, 216 Cal.App.4th at p. 520.) However, under the UCL as amended by Proposition 64, private standing to bring a UCL action is restricted to "a person who has *suffered injury in fact* and has *lost money or property* as a *result* of the unfair competition." (Bus. & Prof. Code, § 17204, italics added, as amended by Prop. 64, § 3, as approved by voters, Gen. Elec. (Nov. 2, 2004).)

The foreclosure of the Property suffices to establish an injury in fact in the meaning of the UCL—the alleged loss of a property interest is sufficient to establish an economic injury for pleading purposes under the UCL. (*Jenkins*, *supra*, 216 Cal.App.4th

9

at p. 522.)  Nevertheless, plaintiffs have not established and cannot establish a causal link between that injury in fact and any purported unlawful, unfair, and/or fraudulent business practice by defendants.  Plaintiffs' default triggered the power of sale clause in the deed of trust, subjecting the Property to nonjudicial foreclosure, not any of the alleged unfair competition practices.  (See *id*. at p. 523 [so reasoning regarding impending foreclosure].)

In short, plaintiffs fail to establish standing to assert a UCL claim, and in any case have not pleaded any unlawful, unfair or fraudulent act on the part of defendants.  As such, their UCL claim was properly dismissed on demurrer.

5.     *PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR*

*PROMISSORY ESTOPPEL, FRAUD OR NEGLIGENT*

*MISREPRESENTATION*

Plaintiffs assert that defendants "made a promise, through oral representations, that they would not foreclos[e] on the Subject Property."  They argue that defendants' actions constitute claims for promissory estoppel (sixth cause of action), fraud (eighth cause of action), and negligent misrepresentation (thirteenth cause of action).  Defendants argue that plaintiffs' allegations lack factuality and specificity.  We agree with defendants.

According to plaintiffs, defendants misrepresented their willingness to enter into a loan modification agreement.  "The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage.  [Citation.]  The tort of negligent misrepresentation, a species of the

10

tort of deceit [citation], does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true." (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.) Promissory estoppel requires "'"'(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'"'"" (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 225.)

"In California, fraud must be pled specifically; general and conclusory allegations do not suffice." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645.) The normal policy of liberally construing pleadings against a demurrer will not be invoked to sustain a fraud cause of action that fails to set forth such specific allegations. (*Ibid.*) The heightened pleading standard for fraud requires "'pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered."'" (*Ibid.*) Thus, "every element of the cause of action for fraud must be alleged in full, factually and specifically . . . ." (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331.) The specificity requirement serves two purposes: (1) to furnish the defendant with certain definite charges that can be intelligently met; and (2) to ensure the complaint is specific enough so that the court can "weed out nonmeritorious actions on the basis of the pleadings." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216-217, superseded by statute on another issue as stated in *Sanchez v. Bear Stearns Residential Mortgage Corp.*, 2010 U.S. Dist. LEXIS 46043, at *18, fn. 4 (S.D. Cal. May 11, 2010).)

11

Here, plaintiffs failed to identify by name, title, or location, the person(s), along with the defendant who employed such person(s), who allegedly made promises concerning a loan modification. Plaintiffs also did not identify the terms of the alleged modification (such as reduction in principal, monthly payment, interest rate, or forgiveness of debt), when the modification would take effect, and whether it would be a temporary or permanent modification. The SAC's lack of factual specificity supports the trial court's conclusion plaintiffs failed to state facts sufficient to constitute a cause of action for fraud.[5]

---

[5] During oral argument, plaintiffs referenced *Aceves v. U.S. Bank N.A.*, *supra*, 192 Cal.App.4th 218, and asserted that their claim for promissory estoppel should remain viable because the SAC alleged that they relied on defendants' promise not to foreclosure by completing the refinance application when they could have pursued alternative measures, such as filing a Chapter 13 bankruptcy, refinancing the Property, or selling it. In *Aceves*, the defendant promised to work with the plaintiff to modify and reinstate the loan if she refrained from converting her Chapter 7 bankruptcy to a Chapter 13 plan or opposing defendant's motion to lift the bankruptcy stay. (*Id*. at p. 227.) However, once the bankruptcy stay was lifted, the defendant foreclosed. (*Ibid*.) The court found promissory estoppel. (*Ibid*.) Similarly in *Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, when the plaintiff held off obtaining a loan to repay her mortgage arrearages, the court held that the defendant's promise to postpone the foreclosure sale of the property supported a promissory estoppel cause of action. (*Id*. at p. 1046.) Here, plaintiffs had not filed for protection under the bankruptcy law, nor had they contacted another lender to refinance the Property.

6. *PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR BREACH OF ORAL CONTRACT, BREACH OF GOOD FAITH AND FAIR DEALING OR INFLICTION OF EMOTIONAL DISTRESS*

Three of plaintiffs' causes of action— breach of oral contract (third cause of action), a breach of the covenant of good faith and fair dealing (fourth cause of action), and infliction of emotional distress (tenth cause of action)—are based on their claim that they were assured that defendants "would not proceed or continue with the foreclosure process with regard to the Subject Property while they were reviewing Plaintiffs' request for a loan modification."

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "Every contract contains an implied covenant of good faith and fair dealing providing that no party to the contract will do anything that would deprive another party of the benefits of the contract. [Citations.] The implied covenant protects the reasonable expectations of the contracting parties based on their mutual promises. [Citations.] The scope of conduct prohibited by the implied covenant depends on the purposes and express terms of the contract. [Citation.] Although breach of the implied covenant often is pleaded as a separate count, a breach of the implied covenant is necessarily a breach of contract." (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 885, fn. omitted.)

13

Mortgages come within the statute of frauds. (*Secrest v. Security Nat. Mortg. Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552 (*Secrest*).) A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent. (Civ. Code, § 1624.) "A mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property." (Civ. Code, § 2922.)

Here, plaintiffs allege they entered into an oral contract with defendants, and that the contract required defendants to forebear from foreclosing on the Property while they were reviewing plaintiffs' request for a loan modification. While plaintiffs' alleged oral contract did not create, renew, or extend the promissory note or DOT, it allegedly modified them by changing defendants' immediate right to foreclose on the Property. "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. [Citations.] A modification of a contract is a change in the obligations of a party by a subsequent mutual agreement of the parties." (*Secrest*, *supra*, 167 Cal.App.4th at p. 553.) Plaintiffs' claims, for breach of contract and breach of the implied covenant of good faith and fair dealing, fail because any agreement to forebear from foreclosing on the Property was not in writing.

Regarding plaintiffs' claim that defendants' actions resulted in plaintiffs' emotional distress, we agree with defendants that creditors in pursuit of debtors may use permissible legal remedies to pursue their economic interests in collecting a debt or foreclosing on their security for their loan regardless of the distress caused by their legal actions. (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 67 ["A party is not

14

subject to liability for infliction of emotional distress when it has merely pursued its own economic interests and properly asserted its legal rights"].) Moreover, plaintiffs only alleged that they suffered from "humiliation, mental anguish and emotional and physical distress" as result of defendants' actions. They list their injuries as depression, anxiety, insomnia, intense headaches, shortness of breath, frequent nightmares, upset stomach, bowel control problems, intense tightening of the neck muscles, and severe chest pains, but offer no detail to support these general and conclusory allegations. The SAC's lack of factual specificity supports the trial court's conclusion plaintiffs failed to state facts sufficient to constitute a cause of action for infliction of emotional distress.

### 7. *LEAVE TO AMEND WAS PROPERLY DENIED*

None of plaintiffs' arguments demonstrate that they can cure the SAC by amendment. (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1041.) In light of the above, therefore, plaintiffs have demonstrated no error with respect to the trial court's decision to sustain defendants' demurrer without leave to amend. However, at oral argument, plaintiffs asserted that they should be allowed to add a claim for predatory lending. "'Predatory lending' is a term generally used to characterize a range of abusive and aggressive lending practices, including deception or fraud, charging excessive fees and interest rates, making loans without regard to a borrower's ability to repay, or refinancing loans repeatedly over a short period of time to incur additional fees without any economic gain to the borrower. Predatory lending is most likely to occur in the rapidly growing 'subprime' mortgage market, which is a market generally providing access to borrowers with impaired credit, limited income, or high debt relative to their

15

income.  Mortgages in this market tend to be in smaller amounts, and with faster prepayments and significantly higher interest rates and fees, than 'prime' mortgages.  [¶] In 2001, California enacted legislation to combat predatory lending practices that typically occur in the subprime home mortgage market.  (Fin. Code, §§ 4970-4979.8 (Division 1.6).)"  (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1244, fn. omitted.)

Division 1.6 applies to a covered loan which is a "consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met:  [¶]  (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.  [¶] (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount."  (Fin. Code, § 4970, subd. (b).)  With respect to a covered loan, Division 1.6 contains numerous prohibitions and limitations, including prohibiting a person who originates a covered loan from steering, counseling, or directing "any prospective consumer to accept a loan product with a risk grade less favorable than the risk grade that the consumer would qualify for based on that person's then current underwriting guidelines, prudently applied, considering the information available to that

16

person, including the information provided by the consumer." (Fin. Code, § 4973, subd. (l)(1).)

Plaintiffs argue that Senior, a 70-year-old man with a credit score above 725, was steered towards a subprime loan when he should been offered a prime loan at a much lower interest rate and payment terms. Otherwise, on appeal plaintiffs do not address the legal requirements for a claim of predatory lending, nor have they shown how they can plead facts sufficient to state such a cause of action. In short, plaintiffs fail to meet their burden on appeal.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


MILLER _____
                                                    J.


We concur:


McKINSTER _____
            Acting P. J.


CODRINGTON _____
                        J.


17